IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

WALLACE W. WHATLEY                                                                               PETITIONER

V.                                                                           CASE NO.: 3:14-cv-21-TSL-JCG

ERNEST LEE                                                                                       RESPONDENT

### REPORT AND RECOMMENDATION

BEFORE THE COURT is the Application of Wallace W. Whatley for Writ of Habeas Corpus under 28 U.S.C. Section 2254, filed January 1, 2014. On February 14, 2014, Earnest Lee, the Superintendent of the Mississippi State Penitentiary (incorrectly named by Plaintiff as "Ernest" Lee), filed a Response. Having considered the Petition, Response, pleadings, records on file, the arguments of the parties, and relevant legal authority, the undersigned recommends that the Petition be dismissed.

I. Facts and Procedural History

In November 2008, Wallace W. Whatley was indicted as a habitual offender in Rankin County, Mississippi, on a three-count indictment "for sale of Dilaudid, a schedule II controlled substance, possession of more than forty dosage units of Dilaudid, and possession of a firearm by a felon." *Whatley v. State*, 123 So. 3d 461, 464 (Miss. Ct. App. 2013). In December 2010, Whatley pled guilty only to one count of the indictment: the "sale of Dilaudid as a subsequent drug offender . . . but not as a habitual offender." *Id.*, at 465. The trial court entered an order of nolle prosequi as to the other two counts. *Id.* Whatley was sentenced to a term of sixty years, "with release after serving twenty of the sixty years, followed by five years of post-release supervision," and "ordered to pay a fine of $5,000 and various court costs and fees." *Id.* Whatley was represented by four different attorneys.

1

> In September 2009, Whatley fired his first lawyer, Richard Rehfeldt, and hired Cynthia Stewart to represent him. He also entered the first of two plea petitions. In it, he pleaded guilty to all three counts of the indictment. Whatley listed his "physical and mental health" as "uncertain" and stated that he was not under the influence of any drugs "except methadone." This plea petition was signed on September 28, 2009 (the date of the plea hearing), and a judgment of conviction for the three counts was signed as well, and entered on October 7, 2009. However, at the plea hearing, at some point Whatley ran out of the courtroom and did not return. A bench warrant was issued for Whatley's arrest when he failed to appear at his sentencing hearing, set for January 2010. Whatley later explained that he fled the courtroom because before the hearing he had received a letter from his methadone clinic stating that if he was imprisoned, and thereby suddenly taken off his methadone treatments, he could have a stroke. Whatley "stayed gone" for one and one-half months, and turned himself in after "detoxing."
>
> In October 2010, Whatley changed lawyers yet again, substituting Stewart with Percy Stanfield and Beverly Poole. In December 2010, another plea hearing was held where Whatley entered a second plea of guilty . . . [the] sale of Dilaudid as a subsequent drug offender . . . , but not as a habitual offender.

*Id.* (footnotes omitted).

In August 2011, Whatley filed a motion for post-conviction relief "alleging his indictment was improper; his plea, involuntary; his sentence, illegal; the judge biased; and his counsel, ineffective." *Id.* After the trial court dismissed his motion, Whatley appealed to the Mississippi Supreme Court which referred the appeal to the Mississippi Court of Appeals. On appeal, Whatley "rais[ed] three issues: he was entitled to a competency hearing before his plea hearing; his guilty plea was involuntary; and his counsel was ineffective." *Id.*, at 466. The court of appeals also addressed "the validity of [Whatley's] indictment and sentence." *Id.* Ultimately, the court of appeals denied Whatley any post-conviction relief on January 22, 2013. *Id.*, at 471. And the supreme court denied certiorari on October 10, 2013. *Whatley v. State*, 123 So. 3d 450 (Miss. 2013) (unpublished table decision).

On January 10, 2014, Whatley filed this petition for habeas corpus raising four issues: (1) that the trial court erred by not holding a competency hearing prior to the entry of the guilty plea,

2

(2) that his indictment was improper, and (3) that he received ineffective assistance of counsel from all four of his attorneys, and (4) that the guilty plea was entered into unintelligently. Mem. Supp. 1-2, ECF No. 2. On February 14, 2014, Respondent Lee answered the Petition. Resp., ECF No. 6. On March 21, 2014, Whatley responded in opposition to Lee's Response. Resp. Opp., ECF No. 9.

## II. Standard of Review

The Court applies the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") in reviewing the Petition. *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997). Under the AEDPA, a federal court may not grant a writ of habeas corpus on behalf of a person in state custody

> with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Section 2254(d)(1) "places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). "Under § 2254(d), a habeas court must determine what arguments or theories supported . . . the state court's decision; and then it must ask whether it is possible fair-minded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of" the Supreme Court. *Harrington v. Richter*, 562 U.S. 86, 101 (2011). In *Williams*, the Court held that:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court

> identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

529 U.S. at 412–13; *see also Chambers v. Johnson*, 218 F.3d 360 (5th Cir. 2000). A federal court making the "unreasonable application" inquiry asks "whether the state court's application of clearly established federal law was objectively unreasonable." *Williams*, 529 U.S. at 409; *Chambers*, 218 F.3d at 363. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams*, 529 U.S. at 411; *accord Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). Section 2254(d)(1) imposes a "highly deferential standard for evaluating state-court rulings," *Lindh*, 521 U.S. at 333 n.7, and "demands that state court decisions be given the benefit of the doubt," *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam). A federal court may not "substitut[e] its own judgment for that of the state court, in contravention of 28 U.S.C. § 2254(d)." *Id.*; *Early v. Packer*, 537 U.S. 3, 10 (2002) (per curiam) (holding that habeas relief is not proper where state court decision was only "merely erroneous").

"The starting point for cases subject to § 2254(d)(1) is to identify the 'clearly established Federal law, as determined by the Supreme Court of the United States' that governs the habeas petitioner's claims." *Marshall v. Rodgers*, 133 S. Ct. 1446, 1449 (2013) (quoting *Williams*, 529 U.S. at 412). Courts may look to federal case law from district and circuit courts as "helpful amplifications of Supreme Court precedent[,]" but these holdings cannot serve as a basis for habeas relief "on an issue that the Supreme Court has not addressed." *Reed v. Quarterman*, 504 F.3d 465, 487-88 (5th Cir. 2007) (quoting *Matteo v. SCI Albion*, 171 F.3d 877, 890 (3d Cir. 1999) and discussing other relevant circuit decisions). Furthermore, under 28 U.S.C. § 2254(e)(1), factual determinations by a state court are presumed to be correct unless the

petitioner rebuts the presumption by clear and convincing evidence. *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000); 28 U.S.C. § 2254(e)(1).

### III. Discussion

A. Competency Hearing

The competency standard for a defendant to enter a guilty plea is the same as the standard required to determine the competency of the defendant to stand trial. *Godinez v. Moran*, 509 U.S. 389, 399 (1993); *Smith v. State*, 831 So. 2d 590, 593 (Miss. Ct. App. 2002). The Supreme Court has developed the following two-prong test to adequately protect this important right: a defendant is competent to stand trial in federal cases if (1) the defendant has the "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and (2) the defendant "has a rational as well as factual understanding of the proceedings against him."[1] *Dusky v. United States*, 362 U.S. 402, 402 (1960). In a federal habeas proceeding stemming from a state court conviction, the burden is on the petitioner to prove, by a preponderance of the evidence, that he was incompetent in fact at the time of the plea. *Thompson v. Blackburn*, 776 F.2d 118 (5th Cir.1985). "The burden imposed upon a habeas petitioner to demonstrate incompetency in fact at the time of trial is extremely heavy . . . ." *Johnson v. Estelle*, 704 F.2d 232, 238 (5th Cir. 1983).

> The court of appeals found that
> 
> there were no "reasonable grounds" for the trial court to order a competency hearing. Over an approximately two-year period, none of Whatley's four lawyers

---

[1] In Mississippi, "Rule 9.06 of the Uniform Rules of Circuit and County Court governs a defendant's competency to stand trial." *Whatley v. State*, 123 So. 3d at 470.

> If before or during trial the court . . . has reasonable ground to believe that the defendant is incompetent to stand trial, the court shall order the defendant to submit to a mental examination. . . . After the examination the court shall conduct a hearing to determine if the defendant is competent to stand trial.

*Id.* (quoting Rule 9.06).

5

> ever raised any competency issues before the trial court. In fact, Whatley's second lawyer, Stewart, attested in Whatley's first plea petition that she was satisfied he was mentally competent, physically sound, and not under the influence of drugs or intoxicants. Although Whatley claims he was on methadone treatments for a narcotics addiction around the time of his first plea hearing, this fact is not necessarily evidence of mental incompetency. At the plea hearing in December 2010, the trial judge was able to observe Whatley's demeanor and behavior, and found him competent "to understand the nature of the criminal offense" to which he pleaded guilty. There is no evidence to support Whatley's assertions that he was mentally incompetent at the time he entered his guilty plea.

*Whatley,* 123 So. 3d at 470. The Fifth Circuit has held under similar facts that it was not an abuse of discretion for a federal district court not to order a sua sponte competency hearing.[2] *See Reed v. U.S.*, 529 F.2d 1239, 1241 (5th Cir. 1976); *see also U.S. v. Williams*, 468 F.2d 819, 820 (5th Cir. 1972) ("Use of narcotics does not *per se* render a defendant incompetent to stand trial."). Therefore, there has been no unreasonable application of federal law here, and this ground is without merit.

### B. Indictment

Whatley argues that the sentencing judge improperly saw a prior version of his indictment which had not yet been amended to remove the additional counts to which he had not pleaded, prejudicing him in the eyes of the judge. Mem. Supp., ECF No. 2, at 15-17. The court

---

[2] Reed pled guilty to two counts of distribution of heroin. "After thorough questioning of Reed, his attorney, and the agent who investigated the case, the court accepted the plea. . . ." *Reed*, 529 F.2d at 1240. Later that same day, Reed "testified extensively for the defense in the trial of his co-defendant." *Id.* On a motion for habeas relief under Section 2255, Reed argued "that he was incapable of making an intelligent decision concerning his plea. . . ." *Id.* The Fifth Circuit affirmed the district court's decision, finding:

> Here, there was no abuse of discretion in the court's failure to order sua sponte a competency hearing simply because Reed used narcotics. Nor was any reasonable cause for ordering a competency hearing presented to the court. The court had an opportunity to observe Reed's demeanor and the quality of his responses, both at his arraignment and during [Reed's testimony during his co-defendant's] trial. The judge questioned Reed about his physical and mental health. Reed acknowledged that his attorney had fully explained the options available and the consequences of a guilty plea, and his answers to the court's queries satisfied the judge that he understood his rights. In the [co-defendant's] trial, Reed testified that although he was still using heroin he was not at that time under the influence of drugs, and that he had been on methadone treatment for about two years, during which time he had held a job. Nothing in Reed's responses at either proceeding would suggest to the court a lack of competence.

*Id.*, at 1241 (internal citation omitted).

of appeals addressed the legality of the indictment text and the possible bias of the trial judge. Therefore, this argument was decided on the merits by the state court.

The court of appeals found that Whatley's indictment was not illegal and contained the required information. *Whatley,* 123 So. 3d at 467 ("As written, the indictment gave Whatley reasonable notice of the charges against him; and he was not prejudiced in preparing his defense."). The court of appeals also held that Whatley's guilty plea "operate[d] as a waiver of any possible non-jurisdictional defects in his indictment." *Id.* (quoting *Garner v. State*, 944 So. 2d 934, 939 (Miss. Ct. App. 2006)). "An indictment should be found sufficient unless no reasonable construction of the indictment would charge the offense for which the defendant has been convicted." *McKay v. Collins*, 12 F.3d 66, 69 (5th Cir. 1994); *see also Rogers v. Miss.*, No. 3:07cv600-TSL-FKB, 2012 WL 4468508, at *2 (S.D. Miss. Sep. 25, 2012) (citing *McKay*).

As to whether the sentencing judge expressed any bias against Whatley, the court of appeals held:

> As for Whatley's allegation of judicial bias, although Judge Chapman's comments are not a part of the transcript, Poole stated in a letter to Whatley dated December 2010, which was attached to Whatley's PCR motion, that Judge Chapman had explained the following at the plea hearing: had Whatley gone to trial and been found guilty, he would have been sentenced to sixty years, day-for-day. Whatley argues this comment indicated judicial bias. We disagree. The judge was merely explaining that if Whatley was sentenced as a habitual offender, the judge would have no discretion in sentencing Whatley, and would be required to give Whatley the maximum sentence of sixty years. Instead, Whatley was not sentenced as a habitual offender and therefore did not have to serve sixty years, day-for day, but only twenty years. Accordingly, this comment cannot be considered judicial bias.

*Id.*, at 469. "Generally, the [United States] Supreme Court has recognized two kinds of judicial bias: actual bias and presumptive bias." *Buntion v. Quarterman*, 524 F.3d 664, 672 (5th Cir. 2008) (citing *Withrow v. Larkin*, 421 U.S. 35, 47 (1975)).

> Almost every bias case before the Supreme Court that has found a due process violation has done so based on presumptive bias. There are three situations in which the Supreme Court has found presumptive bias:
>
>> (1) the decision maker has a direct personal, substantial, and pecuniary interest in the outcome of the case; (2) an adjudicator has been the target of personal abuse or criticism from the party before him; and (3) a judicial or quasi judicial decision maker has the dual role of investigating and adjudicating disputes and complaints.

*Id.* (quoting *Bigby v. Dretke*, 402 F.3d 551, 559 (5th Cir. 2005)). None of these circumstances are present here, and Whatley proves no evidence of actual bias.

Based on the above analysis, there has been no unreasonable application of federal law here, and this ground is, therefore, without merit.

### C. Ineffective Assistance of Counsel

Discussions of the ineffectiveness of Whatley's various counsels run through Whatley's memorandum like a river, lapping at the shores of his other grounds for relief. The undersigned addresses them alongside his main ineffective assistance of counsel argument here.

"To prevail on an ineffective assistance of counsel claim, "first, the defendant must show that counsel's performance was deficient; . . . second the defendant must show that the deficient performance prejudiced the defense." *U.S. v. Gavin*, 77 F. Supp. 3d 525, 528 (S.D. Miss. 2014) (quoting *Strickland v. Washington*, 466 U.S. 668, 687 (1984)); *Liddell v. State*, 7 So. 3d 217, 219 (Miss. 2009). "Ineffective assistance of counsel exists where counsel makes 'errors so serious that counsel is not functioning as the 'counsel' guaranteed by the Sixth Amendment.'" *Young v. Stephens*, 795 F.3d 484, 494 (5th Cir. 2015) (quoting *Strickland*, 466 U.S. at 687). "[S]crutiny of counsel's performance must be 'highly deferential,' and, in order to avoid the effects of hindsight bias, [the Court] 'must indulge a strong presumption that counsel's conduct falls within the range of reasonable professional assistance. . . .'" *Higgins v. Cain*, 720 F.3d 255, 265 (5th Cir.2013)

(quoting *Strickland*, 466 U.S. at 689); *Liddell*, 7 So. 3d at 219-20. "Prejudice means that 'counsel's errors were so serious as to deprive the defendant of a fair trial. . . ." *U.S. v. Painter*, 243 F. App'x 818, 821 (5th Cir. 2007) (quoting *Strickland*, 466 U.S. at 687).

> In the context of guilty pleas, the first half of the *Strickland v. Washington* test is nothing more than a restatement of the standard of attorney competence already set forth. . . . The second, or "prejudice," requirement, on the other hand, focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the "prejudice" requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.

*Hill v. Lockhart*, 474 U.S. 52, 58 (1985); *Reynolds v. State*, 521 So. 2d 914, 918 (Miss. 1988).

> The court of appeals found that:
>
> > Whatley's contentions are without merit. The record is devoid of evidence that any of Whatley's lawyers performed deficiently. There is no evidence the forfeiture had anything to do with Whatley's plea hearing or that Whatley's counsel failed to investigate his case. Stewart stated in her affidavit that Whatley fired her after his running-out-of-the-courtroom incident. Poole also sent a letter to the district attorney explaining Whatley's actions. As discussed previously, Whatley's contentions regarding a faulty indictment and the need for a competency hearing are without merit. There is no evidence Whatley was coerced by Stanfield and Poole into pleading guilty. "Counsel has 'a duty to fairly, even if that means pessimistically, inform the client of the likely outcome of a trial based upon the facts of the case.'" *Robinson v. State*, 964 So. 2d 609, 612 (Miss.Ct.App.2007) (quoting *Daughtery v. State*, 847 So. 2d 284, 287 (Miss.Ct.App.2003)). If the attorney believes that it is in his client's best interest to plead guilty, it is his duty to inform him of that fact. *Id.* Whatley's lawyers did just that.
> >
> > Moreover, Whatley's testimony at the second plea hearing contradicts his allegations. There, he stated under oath that he was "completely satisfied" with his counsel's legal representation. Whatley also signed his plea petition, acknowledging his satisfaction with his legal counsel. In conclusion, he fails to present any specific evidence that but for his counsel's alleged deficiencies, he would not have pleaded guilty.

*Whatley,* 123 So. 3d at 471. The court of appeals found no deficient performance to satisfy the first *Strickland* prong, and the undersigned can find no unreasonable application of federal law here. Therefore, this ground is without merit.

      D. Guilty Plea

"A plea of guilty must be a voluntary and knowing act." *Bradbury v. Wainwright*, 658 F.2d 1083, 1086 (5th Cir. 1981) (citing *Brady v. U.S.*, 397 U.S. 742, 747-48 (1970)); *Burrough v. State*, 9 So. 3d 368, 373 (Miss. 2009). "On federal habeas review, a guilty plea which was voluntarily entered by a defendant who understood the nature of the charges and consequences of the plea will pass constitutional muster." *Hobbs v. Blackburn*, 752 F.2d 1079, 1081 (5th Cir. 1985).

      The court of appeals found that

> Whatley's arguments regarding the involuntariness of his guilty plea are without merit. The transcript shows that at Whatley's second plea hearing, he voluntarily admitted under oath to Count I's charge of sale of Dilaudid. The State explained its proof against Whatley. The trial judge clearly explained to Whatley the nature of the charge, the effect of the plea on his rights, and the minimum and maximum sentences. Whatley denied being coerced to plead guilty. He indicated he understood the charge against him and the consequences of pleading guilty . . . Moreover, Whatley signed a guilty plea petition to the same effect.

*Whatley v. State*, 123 So. 3d at 469. It is clear from the record that the court of appeals did not unreasonably apply federal law here in denying post-conviction relief to Whatley on this ground. Therefore, this ground is without merit.

      Whatley also argues that there was no factual basis to support his guilty plea, which the court of appeals did not address in its opinion. But "the due process clause imposes no constitutional duty on state trial judges to ascertain a factual basis prior to accepting a guilty plea unless . . . the state judge is put on notice that there may be some need for such an inquiry. . . ." *Banks v. McGougan*, 717 F.2d 186, 188 (5th Cir. 1983). In Mississippi, "[m]oreover, a plea of

guilty waives any evidentiary issue." *Jefferson v. State*, 855 So. 2d 1012, 1014 (Miss. Ct. App. 2003) (citing *Bishop v. State*, 812 So. 2d 934, 945 (Miss. 2002)). The undersigned finds that there was no reason on these facts for the trial court to inquire further in this case.

      E. Fundamental Miscarriage of Justice Exception

In his memorandum, Whatley references the fundamental miscarriage of justice exception to support his arguments. *See e.g.,* Mem. Supp., ECF No. 2, at 25, 34. The fundamental miscarriage of justice exception, also known as the actual-innocence exception, is available "only where the prisoner supplements his constitutional claim with a colorable showing of factual innocence." *Kuhlmann v. Wilson*, 477 U.S. 436, 454 (1986). This exception is used to allow a federal court to consider habeas claims that would otherwise be barred. *See Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *U.S. v. Scruggs*, 691 F.3d 660, 670 (5th Cir. 2012) ("'Actual innocence' is not a free-standing ground for relief. Rather, it is a gateway to consideration of claims of constitutional error that otherwise would be barred from review." (footnotes omitted)). Because Whatley's claims are not procedurally barred, the exception cannot apply. Further, the undersigned has above considered all of Whatley's claims.

      F. Additional Discovery

Whatley requests that the Court order production of (1) a photograph of the money confiscated during his arrest and (2) all statements made by the woman to whom Whatley sold the Dilaudid related to the charges against him. Resp. Opp., ECF No. 9, at 12-13. Whatley has not demonstrated good cause for discovery under Rule 6 of the Rules Governing 2254 Cases, and the record should not be expanded under Rule 7. Whatley's request for discovery is denied.

IV. Recommendation

Having considered the Petition, Response, the record, and the relevant legal authority, the undersigned United States Magistrate Judge recommends that Petitioner's request for relief pursuant to 28 U.S.C. § 2254 be denied, and the Application for Writ of Habeas Corpus filed by Petitioner Wallace W. Whatley pursuant to 28 U.S.C. § 2254 be dismissed.

V. Notice of Right to Object

Pursuant to Local Uniform Civil Rule 72(a)(3),

> After service of a copy of the magistrate judge's report and recommendations, each party has fourteen days to serve and file written objections to the report and recommendations. A party must file objections with the clerk of court and serve them upon the other parties and submit them to the assigned district judge. Within seven days of service of the objection, the opposing party or parties must either serve and file a response or notify the district judge that they do not intend to respond to the objection.

L.U. Civ. R. 72(a)(3); *see* 28 U.S.C. § 636(b)(1).

An objecting party must specifically identify the findings, conclusions, and recommendations to which he objects. The District Judge need not consider frivolous, conclusive, or general objections. A party who fails to file written objections to the proposed findings, conclusions, and recommendations within fourteen (14) days of being served a copy shall be barred, except upon grounds of plain error, from attacking on appeal any proposed factual finding or legal conclusion adopted by the Court to which he did not object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir.1996).

**SIGNED,** this the 4th day of November, 2015.

*s/ John C. Gargiulo*
JOHN C. GARGIULO
UNITED STATES MAGISTRATE JUDGE